**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

**FILED & ENTERED**

AUG 5 - 2009

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

IN THE MATTER OF            :

HECTOR MANUEL DIAZ BETANCOURT :     CASE NO. 05-11052
AND JUANA BORIA QUIÑONES,
    **DEBTORS**             :     CHAPTER 13

-----------------------------------

## OPINION AND ORDER

The Trustee filed a motion to dismiss the case claiming that, as of January 9, 2009, Debtors owed $236,700, the lump sum payment due on the 36th month of their confirmed plan. Debtors answered by filing a post confirmation modification pursuant to § 1329.[1] For reasons that follow, we deny Debtors' request for approval of the modified plan and grant the Trustee's motion to dismiss.

## Undisputed Facts

On October 12, 2005, Hector Manuel Díaz Betancourt and his wife Juana Boria Quiñones ("Debtors") filed a voluntary Chapter 13 petition for bankruptcy together with a payment plan. Under this plan, the Trustee would receive a total of $16,225.00 to be distributed according to the plan's provisions. After various 341 meetings of creditors, Debtors filed an amended plan on January 3, 2006. This plan differed from the former one in that it provided that upon the successful conclusion of pending claim on or before the 36th month of the payment plan, debtors would



---

[1] All references to the "Bankruptcy Code", "Code", or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §101 *et seq.*

"modify plan to pay to extent of non-exempt of the judgment to all unsecured creditors". The Trustee did not recommend this plan, arguing that it was insufficiently funded to pay 100% of § 507 of priority claims pursuant to § 1322(a)(6), and it failed creditors' best interest test of § 1325(a)(4). Debtors then filed another plan dated April 21, 2006. Here, Debtors increased the base to $16,360 and modified their statement under "Other Provisions". They now stated in very small print that:

> Upon successful completion of the complaint #EDP2000-0245 on or before the 36th month of plan, debtors would pay a lump sum of $236,700; in defect of success of lawsuit, or that it is not concluded on or before the 36th month, suit is deemed abandoned & liquidation value is reduced accordingly to zero.

During the June 27, 2007 hearing to consider the confirmation of this plan, the Trustee acknowledged that the estimated liquidation value for the pending suit, if successful, was $236,700. Debtors' attorney also stated that the complaint was a tort action against Berríos Development Corp., and the trial was scheduled to begin on March 2008, at Caguas's State Court. We confirmed the plan and the order confirming the plan was entered.

All went well until the 36th month of the plan when the Trustee did not receive the lump sum payment. He filed the motion to dismiss. Debtors objected to the dismissal of the case. They filed a motion for post-confirmation modification of the confirmed plan affirming that they had "made their best effort under the confirmed plan and now wish to modify their plan base

2

to complete pursuant to § 1329 of the Bankruptcy Code. Debtors have paid $16,360 into their plan during 36 months." They attached a modified plan reflecting this change. Two days later, the Trustee filed an "Unfavorable Report on Proposed Post Confirmation Plan Modification" requiring that the Debtors provide proof that the personal suit was still pending, and that they had not been awarded any amount as of the date of the objection.  This was followed by the Trustee's pending motion to dismiss.

Debtors claimed they had already submitted evidence to the Trustee showing the suit was still pending in the local courts. Hence, they contended that the motion for dismissal of the case was filed by mistake, given their request for approval of a pending post-confirmation modified plan. Debtors then asked that we approve the modified plan, enter the discharge and deny the Trustee's motion to dismiss. The Trustee submitted a favorable recommendation for the post-confirmation modification of the plan dated October 28, 2008 and we scheduled all matters for a hearing.

During the April 21, 2009 hearing, the Trustee acknowledged that the Debtors made all payments in the proposed plan, except the lump sum as the lawsuit had been abandoned. Debtors' attorney had informed the Trustee that the local courts rescheduled the trial for May, 2009. At this hearing we did not approve the modified plan. Since Counsel for the Debtors' was excused from attending this hearing, and the Trustee stated that he was going

to withdraw the favorable recommendation, we rescheduled the hearing for June 23, 2009. On that date, Debtors did not propose any change to their modified plan, insisting that the cause of action had been abandoned under the terms of the confirmed plan, allowing them to reduce both the liquidation value of the estate and payments to their creditors.

## Discussion

### I. Did provisions in the confirmed plan result in the abandonment of the state tort suit pending in the local courts?

Under the Code a trustee, or in this case the Debtors, may abandon scheduled estate property when it is burdensome to the estate, or when its value is inconsequential to the estate.[2] The "[a]bandonment can occur only after a notice and a hearing, which assures the interested parties have an opportunity to object to a proposed abandonment".[3] The Code defines the phrase "'after a notice and a hearing'" as,

> (A)...such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
> (B) authorizes an act without an actual hearing if such notice is given properly and if--
>     (i) such a hearing is not requested timely by a party in interest; or
>     (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act.[4]



---

[2] 11 U.S.C. § 554(a).

[3] 5 <u>Collier on Bankruptcy</u>, ¶554.01, p. 554-2 (15th Ed. rev.).

[4] 11 U.S.C. § 102(1).

The appropriate procedure for abandonment specified in the bankruptcy procedural rules, requires that a trustee or a debtor in possession "give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or appointed" so that "a party in interest may file and serve a timely objection".[5] The wording of § 554 and of Fed. Bankr. R. P. 6007 makes it clear that proper notice and the opportunity to object must precede the abandonment of estate property.

In <u>Pioneer Investment Services Company v. Brunswick Associates</u>[6] the U.S. Supreme Court explored the issue of proper notice, albeit with respect to the deadline set for filing proofs of claims in a Chapter 11 case. The Court allowed a tardy proof of claim by a creditor who raised the defense of "excusable neglect" because,

> the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases. ...[O]rdinarily, the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. [cit. omitted][7]

The Court agreed that the "'peculiar and inconspicuous placement of the bar date in a notice regarding a creditors['] meeting



---

[5] Federal Rules of Bankruptcy Procedure, Rule 6007(a).

[6] 507 U.S. 380; 113 S.Ct. 1489; 123 L.Ed.2d 74 (1993).

[7] <u>Pioneer Investment Services</u>, 507 U.S. at 398.

without any indication of the significance of the bar date left a 'dramatic ambiguity' in the notification".[8] Therefore, a notification that is not clear and evident will not be considered a proper notice.

In a recent case, the U.S. Court of Appeals for the First Circuit held that,

> [t]he general rule is that due process requires: notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.[9]

That Court also explained that, the statutory command for notice embodies "'a basic principle of justice-that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights'". (cit. omitted)[10]

In the present case, Debtors gave no separate notice with an opportunity to be heard of their intention to abandon the pending tort claim valued at $236,700 at the conclusion of the 36th month period, if it was not resolved. We note that it was inconspicuously placed in small letters, buried at the end of the plan under "Other Provisions" without any specific reference to the lump sum payment proposed in the third amended plan filed on



---

[8] Ibid.

[9] Arch Wireless, Inc. v. Nationwide Paging, Inc., (In re Arch Wireless, Inc.),534 F.3d 76, 83 (2008).

[10] Id. at 84.

April 21, 2006. Thus, it could have easily been missed by creditors. Given expressions of the U.S. Supreme Court and the U.S. Court of Appeals for the First Circuit in analogous situations described above, we find the Debtors did not give creditors and other parties in interest sufficient notice of the proposed abandonment. Our ruling here is reinforced by Debtors own proffer that the suit was already scheduled for trial, producing the expectancy of its conclusion well before the 36 month time limit.

Moreover, a modification of a confirmed plan is one of the alternatives debtors have when they encounter circumstances not foreseen at the time of the confirmation.[11] Thus, a confirmed plan may be modified for certain specific reasons: to "(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan...; or (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor...".[12]  None of these situations is present here.

Therefore, we conclude that since there was no adequate notice of the abandonment and Debtors did not follow the established procedure for an abandonment, they violated their



---

[11] 8 <u>Collier on Bankruptcy</u>, ¶1329.01, p. 1329-2-3 (15th Ed. rev. 1979).

[12] 11 U.S.C. § 1329(a).

creditors and parties in interest right to due process embodied in § 554 and Fed. R. Bankr. P. 6007. Hence, we find the pending suit or tort claim has not been abandoned.

**II. "Good Faith" and approval of the post confirmation modified plan.**

A modified plan must meet all requirements for confirmation set in the Code.[13] These include that it is "proposed in good faith ... and not by any means forbidden by law".[14] The term "good faith is not susceptible of a universally-applicable definition. Rather, its presence must be determined on a case-by-case basis."[15] Courts consider various factors when dealing with good faith: debtor's motive for filing the petition; how a debtor's actions affect creditors; whether a debtor has been forthcoming with the bankruptcy court and creditors.[16] In other words, § 1325(a)(3) reflects the intention of Congress

> to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith ... confirmation must be denied.
>
> Unmistakable manifestations of bad faith need not be based upon a finding of fraud, requiring proof of malice, scienter or an actual intent to defraud. We simply require that the bankruptcy courts preserve the



---

[13] 11 U.S.C. § 1329(b)(1).

[14] 11 U.S.C. § 1325(a)(3).

[15] In re Slade, 15 B.R. 910, 911 (9th Cir. B.A.P. 1981).

[16] In re Smith, 286 F.3d 461 (7th Cir. 2002).

> integrity of the bankruptcy process by refusing to
> condone its abuse.[17]

"Only if there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith. In examining whether there has been a serious abuse of the Code, many courts have continued to use the fact-sensitive 'all of the circumstances' type analysis..."[18] The gist of this inquiry hinges upon an elemental question: is the debtor "really trying to pay creditors to the reasonable limit of his ability or is he trying to thwart them".[19]

Our careful review of facts at hand leads us to conclude that the Debtors have not met the good faith requirement when filing their "Request for Modification of Plan Pursuant to § 1329". The Debtors led creditors, the Trustee and the Court to believe that a substantial sum would be contributed to the plan as a result of the successful conclusion of the pending claim that would most probably be resolved before the end of the 36 month plan. At the very moment that Debtors understood this would not be possible, they should have notified the Trustee, creditors and the Court. Debtors should have known this notification was of utmost importance, since the plan was only approved after Debtors increased its base by including the estimated value of the

---

[17] In re Waldron, 785 F.2d 936, 941 (11th Cir.(1986).

[18] 8 Collier on Bankruptcy, ¶1325.04[1], p. 1325-15 (15th Ed. rev. 1979).

[19] In re Smith, 286 F.3d 461, 466 (7th Cir. 2002)(citing In re Schaitz, 913 F.2d at 453 (1990)).

9

pending cause of action.

The Court learned that the trial had been rescheduled from March 2008 to May 2009 during the hearing held on April 21, 2009. It was the Trustee, not the Debtors, who apparently contacted the attorney for the pending claim and provided the court with that information. There was no effort on Debtors' behalf to maintain the Court informed of a possible windfall resulting from this intent of abandonment.

In In re Barbosa, a case in which debtors sold property in excess of what was required to satisfy their confirmed Chapter 13 plan and were going to receive a discharge while retaining the excess proceeds of the sale (a significant amount), the Bankruptcy Court, explained that "congress's intent in enacting chapter 13 [was] to encourage debtors to repay their debts to the best of their ability."[20] Debtors there were engaged in a bad faith manipulation of the Bankruptcy Code, when they insist on retaining the excess sale proceeds and obtaining the broad discharge afforded by § 1328(a). Although the facts here differ, the end result is similar: Debtors here would pay creditors a small amount, keep any proceeds from the tort cause of action, while obtaining the extensive discharge provided to Chapter 13 debtors.



Therefore, we find that Debtors did not propose the post confirmation modified plan in good faith, as their proposal

---

[20] 236 B.R. 540, 556 (Bankr. Mass. 1999); aff'd. 235 F.3d 31 (1st Cir. 2000).

"'shocks the conscience'" of this Court.[21] To us, the proposed modification is an intent by these Debtors to obtain an unwarranted windfall through the unfair manipulation of the bankruptcy process.

WHEREFORE, we deny Debtors' request for approval of their post-confirmation modified plan dated October 28, 2008, nullify the provision concerning abandonment of the tort claim pending in the local courts contained in the confirmed plan of April 21, 2006, and grant the Trustee's motion to dismiss.

**SO ORDERED**, in San Juan, Puerto Rico, on August 5, 2009.

SARA DE JESUS
U.S. Bankruptcy Judge

---

[21] Maldonado v. Fontanés, 568 F.3d 263, 272 (1st Cir. 2009) (citing Espinoza v. Cabol, 558 F.3d 83 (1st Cir. 2009).